**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PRIME HEALTHCARE SERVICES, INC.,**<br><br>         Plaintiff,<br><br>    v.<br><br>**SERVICE EMPLOYEES INTERNATIONAL UNION, ET AL.,**<br><br>         Defendants. | Case No.: 14-CV-3831 YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER CASE PURSUANT TO 28 U.S.C. § 1404(A)** |

Defendants Service Employees International Union ("SEIU"), Service Employees International Union-United Healthcare Workers West ("UHW"), Mary Kay Henry, and Dave Regan have filed a Motion to Transfer the instant action. (Dkt. No. 17.) In it they claim that a substantially similar action alleging antitrust violations has previously been filed in the United States District Court for the Southern District of California, and that the factors governing transfer under 28 U.S.C. § 1404(a) favor transfer to that district. Plaintiff Prime Healthcare Services, Inc., ("Prime") filed its Opposition to the motion on October 6, 2014. (Dkt. No. 25.) Defendants filed their Reply on October 14, 2014. (Dkt. No. 34.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion to Transfer based on the first-to-file rule.[1]

**I.    BACKGROUND**

**A.    The Parties and Dispute**

Prime is a hospital management corporation which, along with an affiliated foundation, operates 28 acute care hospitals in eight states, including 15 hospitals in California. (Complaint,

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for **October 28, 2014**.

Complaint, ¶¶ 15-16.) Prime describes itself as largely non-union, and at least some of the healthcare workers at its hospitals are not unionized. (Complaint ¶ 3.) Defendants are a group of labor unions, union-related entities, and their executives. (Complaint ¶¶ 17-30.) The Defendant labor unions represent employees of California's hospitals and clinics, including nurses, aides, assistants, housekeeping staff, and maintenance workers. (Complaint ¶ 18.) According to the Complaint, Defendant Change to Win is a union federation made up of three member unions: Defendant SEIU, the International Brotherhood of Teamsters, and the United Food and Commercial Workers Union. (Complaint ¶ 23.) The Complaint alleges that Change to Win approves SEIU's conspiratorial tactics and supports them through Defendant CTW Investment Group, the investment arm of Change to Win. (Complaint ¶¶ 24-28.)

The heart of the dispute herein concerns the defendants' efforts to unionize hospitals owned by Prime. Prime argues that the defendants have engaged in a conspiracy geared toward either unionizing Prime-owned hospitals or forcing Prime out of the healthcare market. (Complaint ¶ 4.) Prime further alleges that to do so the defendants have engaged in a "corporate campaign" that employs extortion and public attacks to embarrass Prime and disrupt Prime's relationship with its customers. (Complaint ¶ 7.) Prime's Complaint asserts that the defendants' actions constitute a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), and seeks treble damages and attorneys' fees. (Complaint ¶ 14.)

### B.     Chronology of the Litigation

On November 15, 2011, Prime filed suit ("*Prime I*") in the Southern District of California alleging that SEIU, UHW, Kaiser Permanente, and a group of Kaiser-related entities had engaged in an antitrust conspiracy aimed at fixing wages for healthcare workers at higher rates and ultimately eliminating Prime from the healthcare market. The original complaint was dismissed with leave to amend. *See* No. 11-cv-02652 JLS (RBB) 2012 WL 3773848 (S.D. Cal. Aug. 30, 2012). After the case was transferred to another judge in the Southern District, Prime filed a first amended complaint. On October 26, 2012, the defendants moved to dismiss the first amended complaint. By order dated July 25, 2013, the court dismissed the first amended complaint without

prejudice. *See* No. 11-cv-02652 JLS (RBB) 2013 WL 3873074 (S.D. Cal. July 25, 2013). Prime has appealed that dismissal, and the appeal is currently pending.

Prime filed the instant suit ("*Prime II*") in this Court on August 25, 2014. In it Prime again names SEIU and UHW as defendants, along with new defendants Change to Win, CTW Investment Group, and three individuals. The Kaiser entities sued in the Southern District are not defendants here.

**II.  DISCUSSION**

    **A.  First-to-File Rule**

A federal district court has discretion to dismiss, stay, or transfer a case to another district court under the first-to-file rule. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982); *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary."). The first-to-file rule is "a generally recognized doctrine of federal comity" permitting a district court to decline jurisdiction over an action. *Inherent.com v. Martindale–Hubbell,* 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (citing *Pacesetter*, 678 F.2d at 94-95). The rule is meant primarily to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments. *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted). As such, the rule should not be disregarded lightly. *See Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011). Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues. *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 EDL, 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012) (citing *Alltrade*, 946 F.2d at 625).

    **B.  Analysis**

Based on the relevant factors, the Court finds that the first-to-file rule applies here. The Court considers each factor in turn.

### *1. Chronology of Actions*

The first factor looks to the chronology of the two cases. If the action in the transferee court was filed prior to the action pending before the transferor court, then this factor supports transfer. Prime filed the first action in the Southern District in 2011. Thereafter, Prime filed the instant action in 2014. Without question, the first factor is satisfied.

### *2. Similarity of the Parties*

The Court next considers whether the parties in the two cases are similar. Courts have held that "the first-to-file rule does not require strict identity of the parties, but rather substantial similarity." *Adoma v. Univ. of Phoenix*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (citing *Inherent.com*, 420 F. Supp. 2d at 1097). Said differently, "[e]xact identity is not required to satisfy the first-to-file rule." *Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc.*, No. CIV 10–3134 KJM EFB, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters.") (internal citation omitted).

Prime argues that a comparison of the parties in the two actions does not fulfill this factor . (Dkt. No. 25 at 14.) The Court disagrees. While the parties in the two actions are not identical, the core nucleus of the parties is not only the same, but the additional defendants are substantially tied thereto. Thus it is not dispositive that the Kaiser entities sued in *Prime I* are not defendants here or that Prime has named five defendants that were not parties to *Prime I*. The Court takes a more comprehensive review. First, Prime, SEIU, and UHW are all parties to both suits. Second, all of the five newly-named defendants in *Prime II* are closely related to SEIU and UHW. SEIU is a member of Change to Win, and is closely related to CTW Investment Group through its affiliation with Change to Win. Defendant Mary Kay Henry is President of SEIU and Secretary-Treasurer of Change to Win. Defendant Dave Regan is President of UHW and Vice President of SEIU. Finally, Defendant Tom Woodruff is an executive within Change to Win, and has previously held executive positions within SEIU.

Given the close relationship among all of the defendants in the instant case, the greatest distinction between this suit and *Prime I* is that the Kaiser defendants sued in the Southern District

4

are not named as defendants here. This does not render the parties so dissimilar as to preclude application of the first-to-file rule. *See Juniper Networks, Inc. v. Mosaid Techs., Inc.*, No. C 11–6264 PJH, 2012 WL 1029572, at *2 (N.D. Cal. March 26, 2012) (sufficient similarity where five defendants sued in first action were not named as defendants in the second action). Furthermore, the instant Complaint alleges that Kaiser Permanente was complicit in the alleged conspiracy that serves as the basis for the RICO claims. (Complaint at ¶¶ 103-07.) Thus, while Kaiser Permanente is not named as a defendant in *Prime II*, the Court properly considers these allegations in the first-to-file analysis.

### *3. Similarity of the Issues*

The third factor in the first-to-file analysis centers on the similarity of the issues between the two cases. As with the similarity of the parties, courts have held that the issues in the two actions must be substantially similar but need not be identical. *Adoma*, 711 F. Supp. 2d at 1148 (citing *Inherent.com*, 420 F. Supp. 2d at 1097); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) ("[A]s defendant correctly notes, the 'first-to-file' rule is satisfied by a sufficient similarity of issues.").

The Court begins with the similarities. Here, the two suits arise out of many of the same operative facts. While many of the allegations are strikingly similar, a couple of examples suffice for the purposes of this analysis. The *Prime I* first amendment complaint alleges that the Kaiser entities and the members of SEIU and UHW engaged in anticompetitive conspiracy to raise Prime's labor costs and thereby drive it out of the market. (*Prime I* Dkt. No. 46 ¶ 9.) In *Prime II*, Prime contends that the labor unions and their executives engaged in a RICO conspiracy to either unionize Prime's hospitals, and thereby raise its costs, or drive Prime out of the market. (Complaint ¶ 4.) The two complaints allege largely identical conspiracies. Next, both operative complaints allege that Kaiser Permanente and the defendants in the instant case used a partnership between Kaiser and the unions to funnel money from Kaiser to an SEIU-controlled coalition of unions that the coalition in turn paid directly to SEIU and UHW or used to campaign against Prime. (Complaint ¶¶ 103-107; *Prime I* Dkt. No. 46 ¶¶ 175-183.) Both complaints also allege that the defendants campaigned to prevent Prime from acquiring new hospital licenses, and some of the

language in the instant Complaint detailing this allegation is taken verbatim from the first complaint. (Complaint ¶ 152; *Prime I* Dkt. No. 46 ¶ 276.)

Not only do the two suits arise out of many of the same operative facts, but they share common legal issues. In *Prime I* the defendants argued that much of their activity was protected by the *Noerr-Pennington* doctrine, which originally exempted concerted efforts to lobby the government from antitrust liability. *See Prime I*, 2012 WL 3778348, at *8 (order dismissing original complaint). In their Motion to Transfer, the defendants assert that immunity under *Noerr-Pennington* would be an issue in the instant case. (Dkt. No. 17 at 9.) The Ninth Circuit has held that *Noerr-Pennington* immunity can extend to RICO claims. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931-32 (9th Cir. 2006); *Kearney v. Foley & Lardner*, 590 F.3d 638, 645 (9th Cir. 2009). Therefore the contours of the *Noerr-Pennington* doctrine and its applicability to these facts would be issues in *Prime II* just as they were issues in *Prime I*. Likewise, whether the Labor-Management Cooperation Act of 1978, 29 U.S.C. § 186(c)(9), confers immunity for some of the challenged acts was an issue in *Prime I* and could be an issue in *Prime II*. *See Prime I*, 2013 WL 3873074, at *8 (order dismissing first amended complaint).

The Court understands that *Prime I* alleges violations of federal antitrust laws while *Prime II* alleges violations of the federal civil RICO statute. However, the legal issues are substantially similar for transfer to the Southern District to promote judicial economy.

**C. Other Considerations**

Having concluded that each of the factors in the first-to-file analysis weigh in favor of transfer, the Court need not reach the other considerations raised. Nevertheless, the Court addresses Prime's Opposition, based on convenience factors, briefly.

*1. Interests of Justice*

Prime argues that transfer would not further the interests of justice because: (1) there is no pending case in the Southern District of California to which *Prime II* could be related, and there is no guarantee the same judge could preside over both cases; and (2) there is no risk of duplication of effort or inconsistent rulings, since *Prime I* was dismissed. (Dkt. No. 25 at 12-13, 17-19.) The Court considers each argument in turn.

### *a.* *Pendency of Prime I*

Prime's first argument is unavailing. The Court acknowledges that *Prime I* has been dismissed and is pending appeal. However, the Southern District's local rules provide a mechanism by which the same judge who presided over *Prime I* could preside over *Prime II*. The rules state that counsel *must* file a notice of related case whenever counsel becomes aware of a pending case or a case that is soon to be filed that is related to another proceeding already on file. S.D. Cal. Civ. R. 40.1(f) (emphasis added). That requirement holds regardless of whether the first case is pending, has been dismissed, or has otherwise been terminated. *Id.* Pursuant to this rule, upon transfer of *Prime II* to the Southern District, counsel for both parties would be required to notify the court of its relatedness to *Prime I*, allowing the judge who presided over the first case to have *Prime II* reassigned. S.D. Cal. Civ. R. 40.1(h). Thus, the Southern District's local rules make it likely that the same judge would preside over the two cases, and that judicial economy would thereby be promoted. Further, if Prime is successful in its appeal then *Prime I* would be remanded to the same judge to whom the transfer of *Prime II* is most likely to be assigned. This supports transfer of the instant case. *See Univ. of Pittsburgh v. Varian Med. Sys.*, No. C-08-2973, 2008 WL 4279704, at *3 (N.D. Cal. Sept. 16, 2008) (possibility that plaintiff would successfully appeal dismissal of similar first-filed claim supports transfer to avoid "duplicative proceedings and conflicting rulings."). Either way, the section 1404(a) analysis remains the same, since the ultimate aim of section 1404(a) is the prevention of the duplication of effort and the waste of judicial resources. *See Univ. of Pittsburgh,* 2008 WL 4279704 at *3 (transfer to court where earlier-file case was dismissed serves goals of section 1404(a) regardless of outcome of appeal of that dismissal); *see also Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003) (avoidance of multiple litigations based on single transaction is an important element of section 1404(a) analysis).

### *b.* *Duplication of Effort and Inconsistent Rulings*

Prime argues that there would be no duplication of effort or inconsistent rulings because the two cases are substantially different and because that were no rulings made in *Prime I* that would have preclusive effect on *Prime II*. (Dkt. No. 25 at 17-19.) Again, the Court disagrees. The Court

has already found that there is substantial overlap of parties and issues between the two cases. Further, even assuming that there were no rulings made in *Prime I* that would have a preclusive effect in *Prime II*, the judge who dismissed the first amended complaint in *Prime I* gained a familiarity with the overlapping parties and legal issues allowing for more efficiencies in presiding over *Prime II*.

### *2. Convenience*

Prime also argues that the defendants have not shown that the Southern District is a clearly more convenient forum. (Dkt. No. 25 at 6.) Even if the Court agreed, defendants do not bear an affirmative burden to show the same, as "[t]he question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and factors involving convenience of parties and witnesses are in fact subordinate." *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003) (citing *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991)). As such, Prime's arguments—that convenience favors litigation in the Northern District because it has a "greater interest" in adjudicating this case, some of the defendants live there, and the alleged conspiracy was directed from there—are are all subordinate to the interests of justice. *See Wireless Consumers Alliance, Inc.*, 2003 WL 22387598, at *4. ("One frequently mentioned element of the interest of justice is the desire to avoid multiple litigations based on a single transaction.") (internal quotations and citations omitted). As discussed above, transfer would conserve resources and prevent duplicative efforts, thereby furthering the interests of justice.

## II. CONCLUSION

Accordingly, the Motion to Transfer based upon first filing is **GRANTED**. This action is hereby transferred to the Southern District of California.

This Order terminates Docket No. 17.

**IT IS SO ORDERED**.

Date: October 24, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

8